## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| NOVO NORDISK A/S AND NOVO NORDISK INC., | |
| Plaintiffs, | |
| v. | Case No. _____ |
| ANTI-AGING & WEIGHT LOSS MEDICINE, LLC D/B/A ANTIAGING ATLANTA, | |
| Defendant. | |

## COMPLAINT

Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk") file their complaint against Anti-aging & Weight Loss Medicine, LLC d/b/a Antiaging Atlanta ("Defendant") for trademark infringement, false advertising, unfair competition, and deceptive and unfair trade practices, and seek injunctive and other relief.   Plaintiffs allege as follows, on actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

1

## INTRODUCTION

1.      Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

2.      The development of semaglutide is an example of Novo Nordisk's commitment to innovation for people living with chronic diseases. Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"):  Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

3.      Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide.

4.      Novo Nordisk is also the only company authorized to identify its FDA-approved semaglutide medicines using the trademarks Ozempic®, Wegovy®, and Rybelsus®.

5.      The FDA has not approved any generic versions of semaglutide medicines.  To the contrary, the FDA has sent warning letters to companies that claimed that their unapproved drug products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that the Ozempic® and Wegovy®

medicines are currently the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

6.    This is an action brought pursuant to the Lanham Act, 15 U.S.C. §§ 1051 et seq., related state laws, and the common law arising out of Defendant's infringement of Plaintiffs' rights in their Ozempic® and Wegovy® marks and Defendant's acts of false advertising, unfair competition, and deceptive and unfair trade practices.

7.    Defendant uses Novo Nordisk's Ozempic® and Wegovy® marks to market and sell to patients compounded drug products that purport to contain semaglutide.

8.    Even though such compounded drug products have not been evaluated by the FDA for their safety, effectiveness, or quality, Defendant falsely and misleadingly represents to patients that its products are FDA-approved or the same as, or equivalent to, Novo Nordisk's FDA-approved semaglutide medicines.

9.    Defendant's conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024#:~:text=WARNING%20LETTER&text=As%20discussed%20below%2C%20FDA%20has,new%20drugs%20and%20misbranded%20drugs.

medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

## THE PARTIES

10.     Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark.

11.     Novo Nordisk developed the Ozempic®, Wegovy®, and Rybelsus® medicines.

12.     NNAS has granted to NNI exclusive rights to market, advertise, promote, offer for sale, and sell Ozempic®, Wegovy®, and Rybelsus® medicines in the United States.

13.     NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business in Plainsboro, New Jersey.

14.     NNI promotes, offers, and sells Novo Nordisk's Ozempic®, Wegovy®, and Rybelsus® medicines throughout the United States, including in this District.

15.     Defendant Antiaging Atlanta is a Georgia limited liability company with a registered business address at 12600 Deerfield Parkway, Suite 100, Alpharetta, Fulton County, GA 30004, which is in this judicial district and

division. It may be served through its registered agent, Steven J. Strelzik, at 5

Concourse Parkway, Suite 3000, Atlanta, Fulton County, Geogia 30328.

16.    Antiaging Atlanta sells and promotes compounded drug

products that purport to contain semaglutide, but that have not been approved by

the FDA ("Unapproved Compounded Drugs").

17.    Antiaging Atlanta falsely claims or otherwise misleadingly

suggests that its Unapproved Compounded Drugs are the same as or equivalent to

the Ozempic®, Wegovy®, and Rybelsus® medicines.

## JURISDICTION AND VENUE

18.    The Court has subject matter jurisdiction over the Lanham Act

causes of action pleaded herein pursuant to 35 U.S.C. § 1121 and 28 U.S.C.

§ 1338(a).

19.    The Court has original and supplemental jurisdiction over the

state and common law causes of action pleaded herein pursuant to 28 U.S.C.

§§ 1338(b) and 1367.

20.    Defendant is subject to personal jurisdiction in this District

because this is the judicial district and division in which Defendant, as a Georgia-

registered company with a principal place of business at 12600 Deerfield Parkway,

Suite 100, Alpharetta, GA 30004, is deemed to reside.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates in this District, sells its compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC®, WEGOVY®, AND RYBELSUS® TRADEMARKS

22.    Plaintiffs use the trademarks "Ozempic," "Wegovy," and "Rybelsus" to identify and promote the FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines.  The Ozempic®, Wegovy®, and Rybelsus® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

23.    The Ozempic® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.  The Ozempic® medicine also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease.

24.    The Wegovy® medicine is indicated to reduce excess body weight and maintain weight reduction long term in adults and children aged ≥ 12 years with obesity, and some adults with overweight and weight-related medical problems, along with a reduced calorie diet and increased physical activity.

25.    The Wegovy® medicine is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as "cardiovascular" death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

26.    The Rybelsus® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

27.    The Ozempic®, Wegovy®, and Rybelsus® medicines have been extensively studied in clinical trials and are FDA-approved.

28.    Each of the Ozempic®, Wegovy®, and Rybelsus® medicines has a unique safety and efficacy profile which is set forth in its respective product label.

29.    The Ozempic®, Wegovy®, and Rybelsus® medicines are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

30.    Novo Nordisk first adopted and used the Ozempic® mark at least as early as 2017, and has used it continuously since that time.

31.    The Ozempic® trademark is inherently distinctive.

32.    Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Ozempic® mark in many different channels, directed to physicians, other health care professionals, and patients, including on

the websites ozempic.com and novonordisk-us.com.  As a result of its use of the Ozempic® mark, NNAS owns valuable common law rights in and to the Ozempic® mark.

33.    Plaintiff NNAS is the owner of U.S. trademark registration number 4,774,881, issued on July 21, 2015, for the mark Ozempic® for pharmaceutical preparations, in International Class 5.  A true and correct copy of Plaintiff NNAS's registration for the Ozempic® mark is attached hereto as **Exhibit A**.

34.    Novo Nordisk's right to use its registered Ozempic® mark is incontestable.

35.    Novo Nordisk first adopted and used the Wegovy® mark at least as early as 2021, and has used it continuously since that time.

36.    The Wegovy® trademark is inherently distinctive.

37.    Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Wegovy® mark in many different channels, directed to physicians, other health care professionals, and patients, including on the websites wegovy.com and novonordisk-us.com.  As a result of its use of the Wegovy® mark, NNAS owns valuable common law rights in and to the Wegovy® mark.

38.     Plaintiff NNAS is the owner of (a) U.S. trademark registration number 6,585,492, issued on December 14, 2021, for the mark Wegovy® for pharmaceutical preparations, in International Class 5; and (b) U.S. trademark registration number 6,763,029, issued on June 21, 2022, for the mark Wegovy® in a stylized form for pharmaceutical preparations, in International Class 5.  True and correct copies of Plaintiff NNAS's registrations numbers 6,585,492 and 6,763,029 for the Wegovy® mark are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

39.     As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic® and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® marks are exclusively associated with Plaintiffs, serve to identify genuine Novo Nordisk medicines, and are valuable assets of Novo Nordisk.

40.     As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic® and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® trademarks are well-known, strong, and famous marks, and became such prior to any of the acts of Defendant complained of herein.

## <u>DEFENDANT'S SALE OF UNAPPROVED COMPOUNDED DRUGS</u>

41.     Novo Nordisk does not sell its FDA-approved semaglutide medicines, Ozempic® and Wegovy® to Defendant for resale or redistribution.

42.     Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide.

43.     The FDA has not approved Defendant's Unapproved Compounded Drugs.

44.     On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

45.     The FDA defines compounding as a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

46.     According to the FDA, "[c]ompounded drugs are not FDA-approved.  This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

47.     The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs.

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.
[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.

Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4]

48.    As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.  Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[5]

49.    The process used to produce most "semaglutide" used in compounding is fundamentally different from the process used to produce the semaglutide in Novo Nordisk's FDA-approved medicines.  Novo Nordisk manufactures the semaglutide in its medicines, pursuant to its FDA approval, in yeast cells under a closely controlled multistep process that uses recombinant DNA technology.  Most compounded "semaglutide," however, uses a "semaglutide" manufactured via chemical synthesis.  The fundamental differences between these processes have resulted in new impurities, higher levels of known impurities,

---

[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.
[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery.

immunogenicity concerns, and potential stability issues in tested samples of compounded "semaglutide."[6]

50.    The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[7]  In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."

51.    The FDA has stated that the containers and packaging (including multidose vials and prefilled syringes) used by compounders, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.

52.    A publication from the Journal of the American Pharmacists Association also highlighted errors where patients accidentally self-administered doses of compounded "semaglutide" up to ten times greater than the intended amount.[8]

---

[6] Morten Hach *et al*, Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs, Pharm. Res., (Oct. 8, 2024), *available at* https://pubmed.ncbi.nlm.nih.gov/39379664/.

[7] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

[8] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Ass'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.

53.    FDA has issued guidance on its "Concerns with Unapproved GLP-1 Drugs Used for Weight Loss," which provides that:  (1) "compounded drugs are not FDA-approved"; (2) use of compounded drugs containing "semaglutide" "can be risky for patients, as unapproved versions do not undergo FDA's review for safety, effectiveness and quality"; and (3) "FDA has received reports of adverse events related to compounded versions of semaglutide . . . . However, federal law does not require state-licensed pharmacies that are not outsourcing facilities to submit adverse events to FDA so it is likely that adverse events from compounded versions of these drugs are underreported."[9]

## DEFENDANT'S TRADEMARK INFRINGEMENT AND FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS

54.    Despite the foregoing, and well after NNAS's first use and registration of its Ozempic® and Wegovy® marks, Defendant has used Novo Nordisk's Ozempic® and Wegovy® trademarks to market and sell Unapproved Compounded Drugs purporting to contain "semaglutide" that are not the Ozempic® or Wegovy® medicines, and has made false and misleading representations to patients regarding the nature of its Unapproved Compounded Drugs.

---

[9] FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

55.    Defendant makes unauthorized use of Novo Nordisk's Ozempic® and Wegovy® marks.  On its homepage, Defendant advertises that it offers "Semaglutide Ozempic Wegovy for weight loss."  *See* Exhibit D.  Under its drop-down menu, it advertises "Semaglutide (Ozempic)" as part of its "Anti-aging Medicine" services.  *Id.*  On its Semaglutide (Ozempic) page, Defendant references and links to a third-party article titled, "What is Ozempic used for and how does it work?"  *See* Exhibit E.

56.    Despite advertising with the Ozempic® and Wegovy® marks, Defendant does not sell Ozempic® or Wegovy® medicines but rather its Unapproved Compounded Drugs.[10]

57.    Defendant falsely advertises its Unapproved Compounded Drugs by making statements that describe the Ozempic® and Wegovy® medicines but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

58.    Defendant claims or implies that its Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality.

---

[10] Defendant's link to a "Complete side effect list" from Drugs.com is for "oral tablets" of semaglutide.  Ozempic® and Wegovy® are injectable medications.

59.     On its website, Defendants claims, "Semaglutide was originally approved for use with diet and exercise to improve blood sugar control in adults with type 2 diabetes mellitus.  It is now approved for weight loss, specifically obesity management." *See* Exhibit E.

60.     These statements are false and misleading.  First, the FDA does not approve individual molecules like semaglutide, but only complete medicines.  Second, the FDA has not approved, or reviewed for safety and efficacy, Defendant's Unapproved Compounded Drugs.

61.     Defendant also claims or implies that its Unapproved Compounded Drugs have been subjected to clinical studies and trials; contain the same semaglutide that the FDA evaluated in the context of reviewing and approving Novo Nordisk's new drug applications for the Wegovy®, Ozempic®, and Rybelsus® medicines; and achieve therapeutic outcomes instead attributable to the Wegovy®, Ozempic®, and Rybelsus® medicines.

62.     On its website, Defendant claims, "Semaglutide offers glycemic control with improvement to HbA1c levels, moderate weight loss and a significant reduction in risk of major adverse cardiac events as evaluated in a 2-year cardiovascular outcomes trial vs. placebo."

63.     This statement is false and misleading.  On information and belief, no clinical trials have been conducted on Defendant's Unapproved

15

Compounded Drugs. Instead, the cited clinical trial refers to one conducted on Novo Nordisk medicines.

64.    On information and belief, Defendant has engaged in these unlawful practices to attract customers and generate revenues and profits, including by passing off its Unapproved Compounded Drugs purporting to contain "semaglutide" as the Ozempic® and Wegovy® medicines.

65.    Defendant's prominent and misleading use of the Ozempic® and Wegovy® marks is likely to cause patients to believe falsely that they are actually purchasing genuine Ozempic® and Wegovy® medicines; that Defendant is a source for Novo Nordisk's FDA-approved semaglutide medicines; and that Defendant's services are provided, licensed, sponsored, authorized, or approved by Novo Nordisk.

66.    Defendant's use of the Ozempic® and Wegovy® marks is without the permission, consent or authorization of Novo Nordisk. Defendant has no right to use, and Defendant knows that it has no right to use, the Ozempic® and Wegovy® marks in connection with Defendant's Unapproved Compounded Drugs or otherwise.

67.    Novo Nordisk has no control over the nature, quality, or efficacy of the products sold by Defendant, including the Unapproved Compounded Drugs.

68.     Defendant's advertising and promotional materials are false and misleading, suggesting or stating an association with Plaintiffs' FDA-approved Ozempic® and Wegovy® medicines when no such association exists.

69.     There is no need for Defendant to use the Ozempic® and Wegovy® trademarks to advertise or promote its Unapproved Compounded Drugs purporting to contain "semaglutide," other than to trade on the reputation of Plaintiffs and to create confusion in the marketplace or mislead the public regarding the origin, identity, or source of Defendant's Unapproved Compounded Drugs.

70.     Defendant's unauthorized use of the Ozempic® and Wegovy® trademarks is likely to, and on information and belief, has already caused confusion, mistake, and deception, and infringes Plaintiffs' established exclusive rights in those trademarks.

71.     Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks.  Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[11]

---

[11] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded

72.    On information and belief, unless enjoined by this Court, Defendant will continue to use the Ozempic® and Wegovy® marks and otherwise falsely advertise its products as associated with or being the Ozempic® and Wegovy® medicines, all in violation of Plaintiffs' rights.

73.    On information and belief, unless enjoined by this Court, Defendant's unauthorized use of the Ozempic® and Wegovy® trademarks will continue to cause confusion, mistake, and deception, and infringe Plaintiffs' established exclusive rights in those trademarks.

## FIRST CAUSE OF ACTION

### Trademark Infringement in Violation of 15 U.S.C. § 1114(1)

74.    Plaintiff NNAS realleges and incorporates by reference each of the allegations in paragraphs 1 through 73 of this Complaint as though fully set forth here.

75.    Plaintiff NNAS's Ozempic® and Wegovy® marks are inherently distinctive, strong, valid, and protectable trademarks owned by Plaintiff NNAS.

---

Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested."); FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery ("Compounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.").

76.    Plaintiff NNAS's right to use its Ozempic® mark is incontestable and therefore constitutes conclusive evidence of the validity of the mark, of Plaintiff NNAS's registration and ownership of the mark, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registration.

77.    Plaintiff NNAS's trademark registrations for its Wegovy® marks constitute *prima facie* evidence of the validity of the marks, of Plaintiff NNAS's registration and ownership of the marks, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registrations.

78.    By virtue of its prior use and registration, Plaintiff NNAS has priority over Defendant with respect to the use of the Ozempic® and Wegovy® marks for pharmaceutical preparations sold in the United States.

79.    Defendant uses the Ozempic® and Wegovy® marks in connection with the sale, advertising, and promotion of Unapproved Compounded Drugs purporting to contain semaglutide.

80.    Defendant's use in commerce of the Ozempic® and Wegovy® marks is likely to cause confusion, to cause mistake, or to deceive with respect to Plaintiff NNAS's identical marks.

81.    The above-described acts of Defendant constitute infringement of registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Plaintiff NNAS to relief.

82.    Defendant has unfairly profited from its trademark infringement.

83.    By reason of Defendant's acts of trademark infringement Plaintiff NNAS has suffered damage to the goodwill associated with its marks.

84.    Defendant's acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff NNAS, its federally registered trademarks and the valuable goodwill associated with those trademarks.

85.    Defendant's acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the interests of the public in being free from confusion, mistake, and deception.

86.    By reason of Defendant's acts, Plaintiff NNAS's remedies at law are not adequate to compensate for the injuries inflicted by Defendant. Accordingly, Plaintiff NNAS is entitled to entry of preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

87.    By reason of Defendant's willful acts of trademark infringement, Plaintiff NNAS is entitled to disgorgement of Defendant's profits

(enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

88.    By reason of Defendant's willful counterfeiting, Plaintiff NNAS is entitled to an award of treble damages and statutory damages under 15 U.S.C. § 1117.

89.    This is an exceptional case, making Plaintiff NNAS eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

**Trademark Infringement, False Designation of Origin, and Unfair Competition
in Violation of 15 U.S.C. § 1125(a)(1)(A)**

90.    Plaintiffs reallege and incorporate by reference each of the allegations in paragraphs 1 through 73 of this Complaint as though fully set forth here.

91.    Defendant uses the Ozempic® and Wegovy® marks in commerce in connection with Defendant's goods and services and in commercial advertising and promotion of its goods and services.

92.    Defendant uses the Ozempic® and Wegovy® marks in commerce in a manner that is likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing that Defendant's goods or services are authorized, sponsored, approved by, or otherwise affiliated with Plaintiffs, with

Plaintiffs' genuine Ozempic® and Wegovy® medicines, and with the Ozempic® and Wegovy® marks.

93.     The above-described acts of Defendant constitute infringement of the Ozempic® and Wegovy® marks and use of false designations of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), entitling Plaintiffs to relief.

94.     Defendant has unfairly profited from the actions alleged.

95.     By reason of the above-described acts of Defendant, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

96.     The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs, the Ozempic® and Wegovy® trademarks, and the valuable goodwill associated with the trademarks.

97.     The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

98.     By reason of Defendant's acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant.  Accordingly, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

99.    Because the above-described acts of Defendant are willful, Plaintiffs are entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

100.    This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### Defendant's False and Misleading Advertising and Promotion in Violation of 15 U.S.C. § 1125(a)(1)(B)

101.    Plaintiffs reallege and incorporate by reference each of the allegations in paragraphs 1 through 73 of this Complaint as though fully set forth here.

102.    Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

103.    Defendant has violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendant's business practices and products, as set forth above.

104.    Defendant has also engaged in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful.  On information and belief, Defendant provides patients who purchase

Defendant's Unapproved Compounded Drugs (or whom Defendant is trying to persuade to purchase its drugs) information that makes several false or misleading statements, including those described herein and in the exhibits hereto:

105. The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

106. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

107. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

108. By reason of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation.

109. Because Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendant. Accordingly, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief requiring Defendant to cease its false and misleading advertising and promotion and unfair competitive practices.

110.   Because the above-described acts of Defendant are willful, Plaintiffs are entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

111.   This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

### Unfair Competition in Violation of the Common Law

112.   Plaintiffs reallege and incorporate by reference each of the allegations in paragraphs 1 through 73 of this Complaint as though fully set forth here.

113.   The above-described acts of Defendant constitute common law unfair competition.

114.   The above-described acts of Defendant unfairly and wrongfully exploit Plaintiffs' trademark, goodwill, and reputation.

115.   By reason of the above-described acts of Defendant, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

116.   The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the Ozempic® and Wegovy® trademarks.

117.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

118.    By reason of Defendant's acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant.  Accordingly, the Court should enter preliminary and injunctive relief, in addition to awarding disgorgement of Defendant's profits (enhanced at the Court's discretion) and corrective advertising costs to NNAS.

### FIFTH CAUSE OF ACTION
### Violation of O.C.G.A. § 23-2-55

119.    Plaintiffs reallege and incorporate by reference each of the allegations in paragraphs 1 through 73 of this Complaint as though fully set forth here.

120.    Plaintiffs have made extensive use of their Ozempic® and Wegovy® marks in interstate commerce in connection with the advertising and promotion of their products.

121.    As a result of the exclusive and extensive use and promotion of Plaintiffs' marks, these marks have acquired considerable value, have become well known, and are widely associated with Plaintiffs.

122.   Plaintiffs have not consented to or authorized Defendant's marketing, promotion, display, or other use of Plaintiffs' Ozempic® and Wegovy® marks.

123.   Defendant's conduct constitutes an attempt to encroach upon Plaintiffs' business by the use of Plaintiffs' marks, with the intention of deceiving and misleading the public, in violation of O.C.G.A. § 23-2-55.

124.   By reason of the above-described acts of Defendant, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

125.   The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the Ozempic® and Wegovy® trademarks.

126.   The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

127.   By reason of Defendant's acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant.  Accordingly, the Court should enter preliminary and injunctive relief, in addition to awarding Plaintiffs damages for Defendant's fraud and all other monetary and non-monetary remedies available in law or equity.

## SIXTH CAUSE OF ACTION

### Deceptive and Unfair Trade Practices in Violation of
### O.C.G.A. § 10-1-372

128.   Plaintiffs reallege and incorporate by reference each of the allegations in paragraphs 1 through 73 of this Complaint as though fully set forth here.

129.   Through its improper use of Plaintiffs' marks and other acts of unfair competition described above, Defendant has passed off its goods or services as those of Novo Nordisk; caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods or services; caused likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Novo Nordisk; and represented that its goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

130.   The above-described acts of Defendant constitute unfair methods of competition, and unconscionable, deceptive, or unfair acts or practices in violation of the laws of the State of Georgia.

131.   Plaintiff is likely to suffer harm to its reputation and goodwill from the above-described acts. Accordingly, the Court should provide injunctive relief and costs, including attorneys fees.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1.  That the Court enter a judgment against Defendant declaring that Defendant has:

   a.  Infringed the rights of Plaintiff NNAS in its federally registered Ozempic® and Wegovy® marks in violation of 15 U.S.C. § 1114(1);

   b.  Infringed the rights of Plaintiffs in the Ozempic® and Wegovy® marks and engaged in unfair competition, in violation of 15 U.S.C. § 1125(a);

   c.  Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

   d.  Engaged in unfair competition under the common law of Georgia, O.C.G.A. § 23-2-55, and the Georgia Unfair and Deceptive Trade Practices Act.

2.  That each of the above acts was willful.

3.  That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

a. using the Ozempic® and Wegovy® marks, including (i) use in any manner likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in the Ozempic® and Wegovy® marks, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

b. advertising, stating, or suggesting that any Unapproved Compounded Drugs, including any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

   i. are, or contain, genuine or authentic Novo Nordisk Ozempic® and Wegovy® medicines;

   ii. are sponsored by or associated with Novo Nordisk;

   iii. are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

   iv. achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

     v.  achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

     vi.  are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

     vii.  contain any ingredient (including semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

   c.  engaging in unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines; and

   d.  engaging in deceptive acts or practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines.

4.    That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including all advertising, marketing, and promotional materials, that: (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs

31

are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

5.     That Plaintiffs be awarded monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines and that this monetary relief be trebled due to Defendant's willfulness, in accordance with 15 U.S.C. § 1117 and any applicable state laws.

6.     That the Court award disgorgement to Plaintiffs of Defendant's profits resulting from Defendant's unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines.

7.     That Defendant be ordered to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions with respect to Novo Nordisk's Ozempic® and Wegovy® medicines.

8.     That Plaintiffs be awarded punitive damages by reason of Defendant's willful unlawful actions with respect to Novo Nordisk's Ozempic® and Wegovy® medicines.

9.     For pre-judgment and post-judgment interest on all damages.

10.    That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

11.    That the Court award Plaintiffs the costs of suit incurred herein.

12.    For such other or further relief as the Court may deem just and proper.

DATE: January 10, 2024          Respectfully submitted,

By:   */s/ Halsey G. Knapp, Jr.*
      Halsey G. Knapp, Jr.
      Georgia Bar No. 425320
      Jennifer K. Coalson
      Georgia Bar No. 266989
      Krevolin & Horst, LLC
      1201 W. Peachtree St. NW
      Suite 3500
      Atlanta, GA 30309
      Phone: (404) 888-9700
      Facsimile: (404) 888-9577
      hknapp@khlawfirm.com
      coalson@khlawfirm.com

      ***Attorneys for
      Plaintiffs NOVO
      NORDISK A/S and
      NOVO NORDISK
      INC.***